In re Víctor Rivera Colón y Angel Rivera Colón, abogados-notarios, querellados.

Núm. 56.—*Sometido:* Mayo 11, 1944. *Resuelto:* Junio 1, 1944.

*Félix Ochoteco, F. Fernández Cuyar, Benicio Sánchez Castaño y R. González,* abogados de los querellados; *R. A. Gómez, Fiscal del Tribunal Supremo,* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

Los hechos que motivaron este procedimiento de *disbarment* son como sigue:

El 18 de octubre de 1938, en el barrio "Pasto" del término municipal de Morovis, el niño Luis Calderón recibió una patada de un caballo propiedad de Manuel Cacho. La herida recibida por el niño en la frente le produjo una fractura del cráneo, con depresión del hueso frontal y de las meninges y fué calificada por el médico como grave y de posibles o probables serias consecuencias para el futuro.

La madre del menor lesionado encomendó la defensa de los intereses del niño al Licenciado Víctor Rivera Colón, uno de los querellados, con instrucciones de que incoara demanda contra el dueño del caballo, en reclamación de los daños y perjuicios sufridos por el menor. Cuatro días después del accidente, el 28 de octubre de 1938, la firma de abogados Rivera Colón & Rivera Colón, por Víctor Rivera Colón, radicó ante la Corte de Distrito de Arecibo una moción para litigar *in forma pauperis,* acompañada de una demanda de daños y perjuicios por la suma de $5,000, contra Manuel Cacho Vega. En la demanda se describen las lesiones recibidas por el menor, diciendo que el caballo "se abalanzó sobre este menor demandante dándole con la pata trasera una coz en la frente, cayendo Luis Calderón al suelo en estado inconsciente y mortalmente herido y sufriendo otras heridas en diferentes partes del cuerpo". Y se añade, "que con motivo del referido accidente el mencionado Luis Calderón ha sufrido y sufre en la actualidad intensas crisis nerviosas, desvelos, insomnios, ha perdido su salud y se encuentra en un estado de constante intranquilidad, ha ve-

nido sufriendo de dolores en la cabeza y en todo el cuerpo y angustias mentales y morales, etc.''

El día 6 de diciembre de 1938, la misma firma de abogados radicó en la Corte de Distrito una ''moción de desistimiento'', en la que hicieron constar que ellos habían solicitado una indemnización de cinco mil dólares ''sin haber examinado la herida recibida por el menor. Luis Calderón y creyendo de buena fe en las manifestaciones de la madre del menor''; que después de haber examinado la herida y ''haber tenido un cambio de impresiones con el médico que asistió al referido niño'', los abogados, ''con la autorización expresa de la parte peticionaria, han llegado a la conclusión de que la cantidad reclamada es completamente exagerada y no guarda proporción con los daños leves que ha recibido la parte perjudicada''. En la moción se hizo constar que en esa misma fecha habían radicado una demanda ante la Corte Municipal de Ciales, basada en la misma causa de acción, reclamando $150 por los daños y perjuicios sufridos por el menor, más $50 para honorarios de abogado. La demanda radicada en la corte municipal es una copia exacta de la presentada en la corte de distrito y de la cual se trataba de desistir.

En diciembre 6 de 1938, la corte de distrito declaró sin lugar la moción de desistimiento: (1) porque teniendo en cuenta lo que se alega en las dos demandas, la corte entiende que no hay motivo para sacar el caso de la corte de distrito para llevarlo a un tribunal inferior; (2) porque no importa que haya habido alguna exageración o error en la cuantía reclamada, pues el juez puede discrecionalmente otorgar la suma que sea justa después de oír al médico y examinar al menor; y (3) porque apareciendo del récord que la madre del niño es analfabeto hay que suponer que ella no puede darse cuenta del estado del menor y de las consecuencias que puedan sobrevenirle.

En diciembre 12 de 1938, Víctor Rivera Colón, como abogado de la parte demandante radicó una moción en la que solicitaba que se señalara el 16 del mismo mes para presentar prueba en apoyo de la moción de desistimiento. Del récord no consta que se tomara acción alguna en cuanto a esta moción. En enero 28, 1939 los mismos abogados radicaron en la corte de distrito una demanda enmendada, en la cual incluyeron como demandado a Ignacio Cacho Parés, hijo del otro demandado, alegando que este nuevo demandado era arrendatario de la finca de su padre y quien poseía y se servía del caballo para su beneficio. En esta nueva demanda se describen como leves las heridas recibidas por el menor y se reclama la misma suma de $5,000.

En marzo 23 de 1939, estando pendiente la decisión de la excepción previa general formulada por los demandados, los abogados del menor radicaron una "Moción para que se dicte sentencia", en la que hicieron constar que estaban convencidos de que Manuel Cacho Vega no tenía responsabilidad alguna por el accidente, siendo el único responsable su hijo Ignacio, como arrendatario de la finca y dueño del caballo; que Ignacio Cacho les había ofrecido para transigir el pleito la suma de $200, suma que la parte demandante consideraba justa y razonable "ya que las lesiones recibidas por el referido menor no son de la gravedad e importancia mencionadas en la demanda original radicada en este caso". La suma de $200 incluía gastos y honorarios de abogado. El 31 de marzo de 1939, se celebró la vista de la moción. Del récord del caso ante la corte inferior no aparece nada de lo ocurrido en el acto de la vista de la moción para transigir el pleito por $200. Empero, la evidencia practicada ante esta Corte Suprema en la vista del procedimiento de *disbarment* estableció los hechos siguientes:

Al serle presentada la moción para transigir por $200, el Juez Agraít dijo que no aprobaría la transacción propuesta a no ser que viniera el médico a declarar y que se

trajera al menor para que la corte pudiera verlo y apreciar su estado de salud. Declaró el Dr. Marchand, que el niño había mejorado en cuanto al tratamiento de la herida, y añadió: "Las consecuencias de una depresión como esa son siempre durante la vida. El niño se queda deprimido, inservible para la sociedad, aunque él mejorara de la herida. Yo lo creo inútil permanentemente". Oída la declaración del médico, el juez resolvió no aceptar la transacción, y entonces el abogado Angel Rivera Colón dijo que no comprendía lo ocurrido y que iba a desistir de la moción sobre transacción. El 24 de abril de 1939, el mismo abogado radicó un escrito desistiendo de la transacción que ya la corte había desaprobado el 31 de marzo, y acompañó a dicho escrito una demanda enmendada, en la cual se eliminó al demandado Ignacio Cacho Parés y se dejó como único demandado a Manuel Cacho Vega, alegando que éste era el único dueño de la finca y del caballo, y se pidió sentencia por la suma de $5,000. Después de numerosos incidentes que dilataron innecesariamente el caso, el demandado contestó la demanda el 25 de febrero de 1941, fué el pleito a juicio el 3 de marzo del mismo año y el 11 de agosto de 1941, poco menos de tres años desde la fecha del accidente, la corte inferior dictó sentencia a favor del menor por la suma de $1,300, más las costas y $200 para honorarios de abogado.

No estuvo conforme el demandado y apeló para ante esta Corte Suprema. Fué visto el recurso el 10 de junio y resuelto el 24 de noviembre de 1943, revocando la sentencia recurrida y devolviendo el caso a la corte de su procedencia para la celebración de un nuevo juicio. Véase: *El menor Luis Calderón, etc.* v. *Manuel Cacho Vega,* 62 D.P.R. 620.

En la opinión emitida por esta Corte, por voz de su Juez Asociado Sr. De Jesús, se hizo constar que la conducta profesional de los abogados del menor nos parecía por demás extraña y la expusimos con todos sus detalles, haciendo una relación minuciosa de los mismos hechos relacionados en la

presente opinión. Hicimos constar, además, que nos abste-, níamos de hacer comentario alguno en relación con la conducta profesional de los abogados, "a fin de no prejuzgar la investigación que en relación con este asunto deberá practicar el fiscal de este tribunal".

El día 30 de noviembre de 1943 los abogados del menor radicaron una moción en la que pedían que se ordenara una pronta investigación de la conducta de los peticionarios, y que mientras se practicaba esa investigación se ordenara la eliminación de aquellos párrafos de nuestra opinión referentes a la conducta de dichos abogados, "pues una lectura de dicha opinión, sin conocerse el celo profesional, la prontitud con que este caso se radicó, se vió y se obtuvo sentencia favorable al menor demandante, no obstante los deseos de la madre del menor en querer transar o desistir del pleito, podría prejuzgar ante extraños la conducta de estos abogados". Por resolución de diciembre 1 de 1943 ordenamos al fiscal que procediera inmediatamente a practicar la investigación y declaramos sin lugar la eliminación solicitada.

El día 1 de mayo de 1944, el Fiscal de esta Corte Suprema radicó una querella en la que solicita el *disbarment* de los querellados, Licenciados Víctor Rivera Colón y Angel Rivera Colón. En la querella se exponen los mismos hechos que ya hemos relacionado, y basándose en ellos el fiscal formula los siguientes cargos específicos:

1. Que la radicación de la demanda por $150, en la corte municipal, fué hecha por los querellados sin previa consulta con y sin la autorización de la madre del menor.

2. Que cuando radicaron la demanda original en la corte de distrito así como cuando radicaron la otra demanda en la corte municipal, los querellados tenían conocimiento de la gravedad de las lesiones recibidas por el menor.

3. Que la moción para transigir el pleito por la suma de $200, fué presentada por los querellados sin el consentimiento ni aprobación de la madre del menor y con el pleno

·conocimiento de los abogados de que. las lesiones sufridas por el menor eran de carácter grave y de consecuencias que habrían de producir la inutilidad permanente al lesionado.

4. Que el propósito de los querellados al realizar los actos mencionados fué el de beneficiar a los demandados y como consecuencia perjudicar al menor; y que si ese propósito no llegó a consumarse fué debido a la justa negativa del juez ·de la corte de distrito a dar su aprobación a la moción de desistimiento y a la transacción propuesta.

Contestaron los querellados. Negaron haber actuado en momento alguno sin previa consulta y sin el consentimiento ·o autorización de la madre del menor, alegando en contrario que la radicación de la demanda en la Corte Municipal de Ciales se debió a la persistente actitud de la señora Calderón de no querer llevar el pleito adelante "y a las manifestaciones de la madre de dicho menor de que el referido menor estaba perfectamente bien" y "que lo único que ella quería ·era que el demandado pagase los servicios y gastos ocasionados, haciéndose la correspondiente declaración jurada". Alegaron también los querellados que cuando se radicaron las demandas y mociones ya mencionadas, ellos no tenían conocimiento de la gravedad de la herida y lesiones sufridas por el menor; que al principio, cuando ellos se encargaron del caso, la madre del niño les dijo que las heridas era graves, pero que pocas semanas después, cuando ella insistía en desistir del pleito o transigirlo, la señora Calderón "les indicó insistentemente que el menor Luis Calderón estaba bien de las lesiones y que las heridas no eran graves"; que antes de radicar la demanda en la corte municipal, los querellados tuvieron una conversación con el Dr. Marchand sobre el estado del menor "y dicho galeno le dijo a los querellados que estaba mejor de su lesión"; que los querellados no tuvieron conocimiento facultativo de la gravedad de las lesiones, "hasta la vista de la moción de desestimación"; y que ellos actuaron de buena fe, basados en las manifestacio-

nes de la madre del menor y del Dr. Marchand, y en la creencia de que una transacción por $150 ó $200 sería beneficiosa para el menor.

La vista del caso fué celebrada ante el tribunal en pleno el día 11 del mes en curso, quedando sometido a nuestra decisión por la evidencia aducida por una y otra parte. Haremos un resumen de toda la prueba.

Santiaga Calderón, madre del niño lesionado, declaró: Que cuando su hijo fué gravemente herido, ella le entregó el caso a Víctor Rivera Colón para que pusiera la demanda y él lo aceptó y le dijo que haría la demanda por cinco mil pesos. Que después de presentada la demanda Manuel Cacho y su hijo fueron a verla varias veces para ver si ella quería hacer un arreglo; que ella les dijo que hicieran lo mejor que se pudiera, porque su hijo no tenía "mejora" y seguía enfermo y enfermo; que ella no autorizó a ninguna persona ni a sus abogados para que transigieran por esa cantidad, y que los abogados no quisieron en ningún momento que se arreglaran por eso, porque decían que era muy poco, y por ese motivo no se hizo el arreglo; que lo que le ofrecían no daba ni para las primeras veces que se estuvo llevando al doctor; que ella no quería arreglar el pleito por esa cantidad de $150 y en ningún momento estuvo conforme con el arreglo propuesto; que no tuvo conocimiento de la demanda presentada en la Corte Municipal de Ciales; que le dijeron algo sobre la petición presentada en Arecibo para transigir por $200 pero cuando "Angelito" vió que el niño seguía malo él tampoco quiso arreglar por esa cantidad. Que recuerda la primera vez que fué a declarar a la Corte de Arecibo, el día que la llevaron para ver qué podían ofrecer ellos, si ellos se acercaban a una cantidad que podían transigir el negocio, "no por los doscientos pesos, a ver si ellos ponían una cosa que el niño se remediara"; que ella no sabía que ya en la corte había presentada una solicitud de transacción por $200; que eso ocurrió como mes y medio después del acci-

dente, cuando el niño estaba aún en el hospital, y cuando ella quiso llevárselo a su casa el doctor le dijo que le iban a hacer otra operación; que cuando ella entregó el caso a los querellados no hizo ningún arreglo especial, pero convino en que les pagaría de lo mismo que se sacara. Contestando a preguntas de la defensa, dijo: Que los querellados en ningún momento antes de radicar el pleito vieron al niño, y no recuerda si vieron al médico que lo asistía; que fué ella quien dijo a los abogados lo que le había ocurrido al niño; que los Cacho fueron a verla varias veces y le decían que transigiera porque ellos eran colindantes con su finca y si no transigía le iban a poner una hortaliza cerca de su casa para que no pudiera criar pollos, y que por eso ella "a veces decía que sí y otras veces no"; que ella contó a sus abogados su conversación con Cacho, y ellos le decían que en ningún momento dejarían arreglar por tan poco dinero; que no recuerda si Angel Rivera Colón le dijo que iba a presentar una moción para arreglar el pleito por $150 ó $200; que fué un día a la Corte de Arecibo, con el niño, porque la citaron; que el único documento que ella firmó, poniendo una cruz, pues ella no sabe escribir, fué para poner la demanda como pobre, siendo esa la única vez que le llevaron papeles a firmar; que en ningún momento prestó ella una declaración jurada ante don Pepe Parés, Juez de Paz de Morovis, "a don Pepe Parés no le he hecho yo cruz delante de él"; que fué delante de Juan Rodríguez que ella dió la firma para poner la demanda, pero nunca firmó nada ante el Juez Parés.

El doctor Juan Sixto Marchand, después de describir la herida recibida por el niño y sus naturales consecuencias, declaró: Estuvo asistiendo al niño durante tres meses, aproximadamente. El muchacho tiene ahora de 13 a 14 años, con la capacidad mental de un niño de 4 años y el desarrollo físico de un niño de nueve años, y quedará inútil permanentemente. El niño fué dado de alta, en cuanto a la curación

de la herida, como a los tres meses después del accidente. Víctor Rivera Colón estuvo una vez en su oficina a preguntarle por el niño. No recuerda lo que hablaron, pero hablaron con respecto al niño. Esa conversación fué quizás durante los dos primeros meses de la enfermedad. No recuerda los detalles de la conversación, pero tuvo que haber informado al abogado sobre la naturaleza grave de la herida y puede ser, pero no lo recuerda, que también le hablase sobre las consecuencias de la herida. El día de la vista sobre la moción de transacción, Angel Rivera Colón fué a burcarle a su oficina en Manatí. No recuerda haber hablado con el abogado, durante el viaje de Manatí a Arecibo, sobre la naturaleza de la lesión ni sobre la declaración que iba a dar ante la corte. Declaró ante la corte de distrito lo mismo que ahora declara ante el Supremo sobre la gravedad de la herida y la incapacidad permanente del lesionado. Contestando a preguntas de la defensa, declaró: Que ninguno de los dos querellados se acercó a él en momento alguno para pedirle que declarara aminorando el carácter de las heridas, y que él no se lo hubiera permitido. Cuando declaró en la corte que la herida y sus consecuencias eran graves, Angel Rivera Colón retiró la moción de transacción. Interrogado de nuevo por el fiscal, respondió: En la conversación que tuvo con Víctor Rivera Colón, éste no le consultó si el estado del menor justificaría una rebaja en la reclamación, de $5,000 a $200. Tampoco fué consultado en cuanto a ese extremo por Angel Rivera Colón el día que éste fué a buscarle para la vista sobre la moción de transacción, pero en Arecibo ántes de comenzar la vista le habló del caso y sobre sus consecuencias, como él las veía. Fué cuando llegó a la corte que se enteró de que se trataba de transigir el caso por $200. Se lo informó el abogado, diciéndole que dependía de lo que él como médico declarase sobre la gravedad del caso. Que si Víctor Rivera Colón hubiera consultado con él sobre las consecuencias de la herida, seguramente no

hubiese dicho lo que dijo en la moción de desistimiento que presentó el 5 de diciembre de 1938: "que después de examinada la herida del menor Luis Calderón y haber tenido un cambio de impresiones con el médico que asistió al referido niño, estos abogados, con el consentimiento expreso de la parte peticionaria, han llegado a la conclusión de que la cantidad reclamada es completamente exagerada, y no guarda proporción con los daños leves que ha recibido la parte perjudicada." Él le dijo al abogado que la herida era leve, pero no las consecuencias, que es distinto. En todas las conversaciones que tuvo con los abogados les dijo que la herida era grave; y cuando Víctor Rivera Colón le fué a ver dos meses después del accidente, si le preguntó sobre la herida tuvo que haberle dicho que la herida había sanado.

Compareció como testigo el niño Luis Calderón. Bastaron las pocas preguntas que se le hicieron para convencer al tribunal de que el niño ha quedado inútil como consecuencia de la herida. Estaba en la escuela cursando el segundo grado en 1938, cuando ocurrió el accidente; y continúa en segundo grado seis años después, en 1944. Su mentalidad es realmente la de un niño de cuatro años de edad. Su aspecto es el de un niño raquítico, débil y enfermizo. Tiene 13 ó 14 años de edad y aparenta tener no más de nueve. La descripción que de él nos hiciera el doctor Marchand es correcta.

Ignacio Cacho Parés, declaró: que él supo que lo habían demandado porque se lo dijo Angel Rivera Colón; que el mismo abogado le propuso que fueran a un arreglo, diciéndole: "Eso te lo arreglo yo". Rivera Colón le dijo que le arreglaba el caso por $300, y él le contestó que era insolvente. Rivera Colón le dijo que lo arreglaría por $200, y le aconsejó que arreglara por esa suma, pues era un caso en que gastaría más que eso en abogado. Entonces él, Cacho, convino en arreglar, pero por mediación de la corte, por tratarse de un menor. Entregó $15 a su padre para que se los entregara a uno de los abogados, comprometiéndose a pagar los

$185 restantes cuando se aprobara la transacción. Fué a la corte el día de la vista de la moción de transacción, llevando consigo los $185. Angel Rivera Colón dijo que se quedase abajo y que cuando él lo necesitara lo mandaría a buscar. Cuando el abogado bajó y le preguntó qué hacía con el dinero, el abogado le dijo "llévatelo y el día que se te avise lo traes".

Terminada la prueba del fiscal y habiendo la corte reservado su fallo en cuanto a la moción de la defensa para la desestimación de la querella por insuficiencia de la prueba, los querellados ofrecieron la prueba testifical siguiente:

El querellado Víctor Rivera Colón declaró: Se graduó en junio de 1938 en la Universidad de Puerto Rico y prestó juramento en julio del mismo año. Tenía entonces 26 años y ahora tiene 32. Empezó a trabajar como abogado a la sombra de su hermano, en Ciales. Por las noches trabajó como maestro en la Central High School desde 1938 a 1940. La señora Calderón le mandó aviso de que quería verle en relación con el accidente de su hijo. Fué a verla y ella le dijo que el niño estaba grave, que se moría. Francisco Rivera Barreras, compañero suyo de Universidad, que fué quien le trajo el aviso de la señora Calderón, le informó que la herida era en la misma frente, en el medio. Entonces él hizo la demanda por $5,000. Pocos días después de radicada la demanda, la señora Calderón fué a visitarle y le dijo que quería arreglar el pleito y que se conformaba con los gastos médicos en que había incurrido; que al principio ella se había impresionado mucho con la herida, pero que el niño había mejorado, estaba bien y ella no creía que era grave; que Cacho era rico y no quería echárselo de enemigo. Él le dijo que no desistía de llevar el pleito, que era un pleito bueno. El abogado Rafael Padró Parés se vió con él y le dijo que era mejor que se transigiese el pleito porque la señora Calderón lo iba a hacer quedar mal; que él como abogado de Manuel Cacho aceptaba una transacción decorosa

para el niño, "pero que yo era muy joven y no sabía como eran esos pleitos". Él le dijo a Padró Parés que tenía que hablar con el Dr. Marchand. Vió al doctor en su consultorio y le preguntó qué clase de herida tenía el niño y cuál era su estado; y Marchand le respondió: "está perfectamente bien, está cerrada" y no le dijo nada más. No podía dudar de lo que le dijo el doctor porque la misma madre del niño decía que la herida era leve. No le preguntó al doctor sobre las consecuencias; le preguntó sobre la herida solamente. Estudió en la Universidad de Puerto Rico y tiene que confesar que en el campo de "torts" no le enseñaron la forma de conducir esos pleitos. El curso que tomó fué de un semestre. Se vió con Padró Parés, abogado de Cacho, para la transacción, y le preguntó en qué forma se iba a hacer la transacción, pues había una demanda en la corte de distrito por $5,000. Padró le dijo que podía hacerse de dos modos: radicando una moción de desistimiento en la corte de distrito y una nueva demanda en la corte municipal, explicando a la corte el motivo del desistimiento; o llevando el caso ante la corte de distrito para que el juez aprobase la transacción. Que tiene que confesar que él no sabía cómo se hacía una transacción de menores, pues tampoco se lo enseñaron en la Universidad. Estuvo buscando en 42 libretas que conserva de cuando estudiaba y no encontró nada sobre eso. Entonces procedió en la forma aconsejada por Padró Parés, radicando la moción de desistimiento acompañada de copia de la demanda radicada en la corte municipal. El convenio entre él y Padró fué que no se emplazaría a Manuel Cacho en la corte municipal hasta que la de distrito aprobase la moción de desistimiento. El día siguiente al de la radicación de la moción, se encontró en San Juan con su profesor Licenciado Manuel Benítez Flores, le explicó lo que había hecho, preguntándole si eso era ilegal. Su profesor le contestó que no era ilegal, "pero no es lo correcto" y añadió: "este asunto te puede costar en el

mañana una contrariedad; debes hablar con el juez y decirle cuál es la situación''. Entonces fué a ver al Juez Agraít y le indicó que la madre no quería defender a su hijo, que algunas personas la estaban persuadiendo para que no siguiese el pleito, y que fué por ese motivo que el juez exigió prueba sobre el estado del menor y ordenó al fiscal que hiciera una investigación. Entonces, en vista de su inexperiencia y después de consultar con su hermano desistieron de la demanda en la corte municipal, dejando pendiente la transacción ante la corte de distrito. Fué en ese momento que su hermano Angel intervino en el pleito.

Declararon los jueces de distrito de San Juan Ricardo La Costa y Rafael Cordovés Arana y el Procurador General Interino, Jesús A. González, sobre la buena reputación de que gozan los querellados en la comunidad.

Llamada por el tribunal, volvió a declarar la señora Calderón, y dijo: En la fecha del accidente su hijo tenía entre seis y siete años de edad, era un muchacho inteligente y despierto y estaba en el segundo grado. Era un muchacho fuerte, saludable y listo. Hoy no lo es. La mayor parte del tiempo se pasa quejándose de dolor de la cabeza y del oído y casi no ve por un ojo. Duerme mal. Continúa todavía en el segundo grado. Le dan ataques de nerviosidad.

El querellado Angel Rivera Colón declaró: Su primera intervención en el pleito fué con motivo de la moción de transacción. Su hermano Víctor le encomendó que continuara el caso en Arecibo, pues él tenía que estar en San Juan. Cuando Víctor le informó de la moción de desistimiento y de la demanda ante la corte municipal, él le dijo que ese procedimiento no era correcto, que lo correcto hubiera sido radicar la moción de transacción en la corte de distrito. Transcurrieron dos o tres meses y Víctor no le dijo nada más hasta que se radicó la moción de transacción. Asistió a la vista de la moción y notificó a la señora Calderón y al Dr. Marchand para que fuesen a la corte. Al oír

la declaración del Dr. Marchand, se dirigió al juez y le dijo que no presentaba más prueba porque entendía que no podía transigirse el caso y solicitó permiso para radicar una moción desistiendo de la moción de desestimación. Entonces el Juez Agraít declaró que él no podía acceder a la transacción dadas las consecuencias que podían sobrevenir al menor. A los pocos días radicó la moción desistiendo de la transacción y una demanda enmendada. Cuando fué con el Dr. Marchand desde Manatí a Arecibo, no habló con él nada sobre el estado del menor ni sobre las consecuencias que pudiera traerle la herida. No se enteró de nada hasta que oyó al doctor declarar en la corte.

La declaración del Lic. Manuel Benítez Flores corroboró la del querellado Víctor Rivera Colón en cuanto a la consulta que éste le hiciera sobre la legalidad o corrección del procedimiento seguido por dicho querellado para transigir el pleito.

Declaró el Hon. Ricardo Agraít Aldea, Juez de Distrito de Arecibo: Recuerda que se presentó una moción para desistir del caso en la que se hacía constar que se había radicado una demanda en la Corte Municipal de Ciales. Se negó a aprobar el desistimiento, resolviendo que el caso siguiera en la corte de distrito. Tiene la creencia de que uno de los hermanos, le parece que fué Víctor, le dijo que la señora Calderón estaba empeñada en transigir. Esto tuvo que haber sido después de presentada la moción, porque si le hubiese consultado antes no la hubiese presentado. Cuando se presentó la moción para transigir por $200 él dijo que no aceptaba la estipulación a no ser que viniera el médico a declarar y el menor para él poder ver cómo estaba. Al oír la declaración del médico, él dijo: "No debemos seguir esta prueba; con esta declaración del médico yo no voy a aceptar esta transacción". Entonces el señor Angel Rivera Colón dijo: "Yo no comprendo, voy a desistir", y a los pocos días presentó la moción desistiendo de la transacción.

Tras un cuidadoso y sereno estudio de los hechos que acabamos de exponer y sobre los cuales no existe controversia alguna, nos vemos precisados a ratificar la opinión ya expresada por esta corte en cuanto a la extraña conducta de los abogados del menor en la tramitación de su reclamación.

Es por de más extraño que un abogado a quien se encomienda la defensa de un niño que acaba de ser gravemente y, tal vez, mortalmente herido, demuestre tan poco interés en la suerte de su defendido, que ni siquiera se ocupe de ir a visitarle para enterarse de su estado, de la gravedad de sus heridas y de las consecuencias que esas lesiones puedan producir para la vida futura del menor.

Es en verdad extraño que durante todo el tiempo transcurrido desde el 18 de octubre de 1938, fecha del accidente, hasta el 31 de marzo de 1939, fecha en que fué vista y desestimada la moción de transacción, a ninguno de los dos abogados defensores se le ocurriera visitar al niño o pedir informes sobre su estado al médico que le asistió durante tres meses consecutivos, especialmente cuando ese mismo médico acompañó a uno de esos abogados, Angel Rivera Colón, desde Manatí hasta Arecibo, precisamente para declarar ante la corte con relación al estado de salud del menor. Con una simple pregunta al Dr. Marchand, pudieron los abogados haberse enterado de la lamentable condición en que había quedado su cliente y haberse evitado la triste experiencia de ver justamente rechazada por un tribunal de justicia una proposición para compensar con la exigua suma de $150 los sufrimientos y la inutilidad permanente de su defendido.

Es sorprendente y extraño que a un abogado, que por inexperiencia o por deficiencia en su preparación universitaria no sabe cuáles son los pasos que debe dar para defender los intereses de su cliente, se le ocurra como única solución de su conflicto ir a consultar a y seguir el consejo del abogado defensor de la parte contraria.

Falta de experiencia, ignorancia de las leyes procesales e insuficiencia de su preparación académica son las defensas alegadas por el querellado Víctor Rivera Colón. Ellas podrán ser suficientes para explicar sus actuaciones y para atenuar la responsabilidad en que pudiera haber incurrido, pero no lo son para eximirle de una merecida reprimenda y censura por sus actuaciones en el caso encomendado a su defensa. No menos y tal vez más digno de censura es el otro querellado, Angel Rivera Colón, quien incurrió en las mismas faltas en que incurriera su hermano, no obstante haber estado ejerciendo como abogado por once años con anterioridad a los hechos relatados.

■ Es deber del abogado ser diligente, activo y persistente en la defensa de los intereses de su cliente. En un caso como el del menor Luis Calderón, es negligencia inexcusable el no haber visitado al niño lesionado para enterarse de la naturaleza e importancia de sus lesiones y el no haber entrevistado al médico para informarse sobre las probables consecuencias de la herida. Ese interés por parte del abogado en adquirir conocimiento personal de los hechos es aconsejable, no solamente por ser necesario y conveniente para la mejor defensa del caso, si que también como medida de protección para el propio abogado contra una posible simulación o exageración por parte del lesionado. Se han visto muchos casos en que la simulación, que pudo ser descubierta por el abogado si hubiese sido diligente, fué puesta de manifiesto en el acto del juicio, quedando el abogado negligente expuesto a que se le considerase como parte en la simulación.

■■ Siendo el abogado un funcionario de las cortes de justicia, es su deber ser franco, honrado y sincero con los jueces, exponiéndoles claramente todos los hechos, sin ocultar los que puedan ser desfavorables y sin exagerar los favorables. En casos que envuelven intereses de menores, el abogado que tenga alguna duda en cuanto a cómo debe pro-

ceder para la mejor defensa de esos intereses, debe seguir como mejor práctica la de solicitar un consejo del juez de distrito, quien por ministerio de la ley es el llamado a velar por los intereses de los menores e incapacitados. Si los querellados en este caso hubiesen pedido un consejo al Juez Agraít, en vez de pedirlo al abogado de la parte contraria, seguramente se hubiesen evitado las amarguras y sinsabores de este procedimiento.

La inobservancia de estas reglas ha sido la causa de que hayan transcurrido seis años desde que ocurrió el accidente, sin que el menor lesionado haya podido cobrar aún la indemnización a que pudiera tener derecho.

De la evidencia presentada ante esta corte, de la transcripción de la practicada ante la corte inferior y del informe del fiscal de este tribunal, aparecen ciertos hechos de los cuales debemos tomar conocimiento, aun cuando el fiscal no ha formulado cargo específico alguno con respecto a los mismos en la querella que estamos considerando. Nos referimos al alegado contrato simulado celebrado entre Manuel Cacho Vega y su hijo Ignacio Cacho Parés con el supuesto propósito de hacer aparecer a Ignacio como arrendatario de la finca, a fin de que éste pudiese obtener de la Administración de Ajuste Agrícola una suma mayor que la que hubiera podido obtener su padre como dueño de la finca.

Debemos abstenernos de expresar opinión en cuanto a la participación que en la preparación de dicho contrato haya podido tener el querellado Angel Rivera Colón, pues no habiéndose formulado un cargo contra él sería impropio que hiciéramos un pronunciamiento en cuanto a esos hechos, sin que el querellado haya tenido una oportunidad de ser debidamente informado del cargo y de presentar su defensa. Empero, creemos que es nuestro deber requerir al fiscal de esta corte para que proceda a formular una nueva querella contra el abogado Angel Rivera Colón en relación con la

participación que el mismo haya tenido en la preparación del alegado contrato simulado.

Confiemos en que nuestras observaciones y consejos sirvan para orientar y guiar por el camino recto y luminoso de la ley a los querellados y a todos los que por él empiezan a dar sus primeros pasos.

*Consideradas todas las circunstancias del caso, debe dictarse una resolución censurando a los querellados por sus actuaciones en el caso a que se refiere la querella.*