El menor LUIS CALDERÓN, representado por su madre con patria potestad SANTIAGA CALDERÓN, demandante y apelado, *v.* MANUEL CACHO VEGA, demandado y apelante.

Núm. 8639.—*Sometido:* Junio 10, 1943. *Resuelto:* Noviembre 24, 1943.

*Rafael Padró Parés,* abogado del apelante; *Ángel Rivera Colón,* abogado del apelado.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del tribunal.

La conducta de los abogados del demandante en la tramitación de este caso es por demás extraña y a los efectos de hacer cumplida justicia en el presente caso debemos exponerla en esta opinión.

La demanda original se radicó el 24 de octubre de 1938 y fué dirigida contra Manuel Cacho Vega exclusivamente,

solicitándose sentencia contra él por la cantidad de $5,000. El 5 de diciembre siguiente, el demandante, por sus abogados, radicó una moción alegando que después de examinada la herida del menor demandante y haber tenido un cambio de impresiones con el médico que lo asistió, sus abogados, con la autorización expresa de la madre de dicho menor, habían llegado a la conclusión de que la cantidad reclamada ($5,000) era completamente exagerada y no guardaba proporción con los daños leves que había recibido la parte perjudicada; que en dicha fecha la parte demandante había radicado una demanda contra el mismo demandado en la Corte Municipal de Ciales basada en la misma causa de acción, solicitando sentencia por $150 por concepto de daños y perjuicios, más $50 para honorarios de abogado. Acompañaron copia de la demanda radicada en la Corte Municipal de Ciales y solicitaron de la corte inferior diera por desistido al demandante de la acción establecida el 24 de octubre de 1938, para continuar el pleito en la Corte Municipal de Ciales.

En su resolución denegando la referida moción del demandante, la corte inferior, entre otras cosas, dijo:

"Teniendo en cuenta lo que se alega en la demanda original y en la moción para litigar como pobre y aun en la misma demanda que se ha presentado en la Corte Municipal, la Corte entiende que no hay ningún motivo para sacar este caso de la Corte de Distrito de Arecibo para llevarlo a un tribunal inferior, cuando se trata, según se jura en la moción para litigar, que hubo una fuerte fractura en la frente y en la parte superior del ojo derecho del menor, que dicho menor está en estado de gravedad, y que sufre de fuertes dolores de cabeza.

"Presentada ya la demanda en la Corte de Distrito, no importa que haya alguna exageración o error en la cuantía reclamada, pues el Juez puede discrecionalmente otorgar la suma que sea justa después de oír al médico y examinar al menor. No se explica por qué hay que presentar otra demanda en otro tribunal cuando ya el pleito está entablado en esta corte de distrito.

"Además, aparece también del récord que la madre del menor, que tiene la patria potestad, no sabe leer ni escribir, y hay que suponer que tampoco puede darse cuenta del estado del menor y de

las consecuencias que puedan sobrevenirle por la coz de un caballo en la frente.

"Por tanto, y mientras la Corte no tenga oportunidad de oír evidencia de facultativos y de examinar al menor, se deniega la moción para que se declare por desistida a la parte demandante de la demanda en este caso.

"En caso que la madre del menor deje de proseguir este caso con actividad, la Corte nombrará un defensor judicial para que continúe el mismo en defensa de los intereses de dicho menor."

Aparece, además, de los autos que el 28 de enero de 1939 los abogados del demandante enmendaron la demanda original que habían radicado en la corte inferior, incluyendo como parte demandada, juntamente con el demandado original Manuel Cacho Vega, al hijo de éste Ignacio Cacho Parés. En dicha demanda enmendada se solicitaba sentencia por $5,000 contra los dos demandados. El demandado Manuel Cacho Vega presentó excepción previa contra esta demanda el 3 de febrero de 1939, sin que aparezca que tal excepción fuese oída por la corte. El 20 de marzo de 1939 volvieron los mismos abogados del demandante a radicar una moción exponiendo:

"1. Que originalmente se radicó demanda en el presente caso contra el demandado Manuel Cacho Vega, porque de primera intención se creyó de buena fe que dicho demandado Manuel Cacho Vega era el responsable civilmente de los daños objeto de la presente causa de acción, por ser el dueño de la finca donde ocurrió el accidente.

"2. Que posteriormente y luego de una investigación en el asunto se supo que la finca estaba desde hace años cedida en calidad de arrendamiento al otro demandado Ignacio Cacho Parés y que éste era el dueño del caballo que originó el accidente de la causa de acción, siendo dicho demandado Ignacio Cacho Parés el único responsable de los daños y perjuicios, y por tal motivo y conociendo estos hechos se radicó demanda enmendada incluyendo como demandado a Ignacio Cacho Parés; que el referido contrato de arrendamiento fué formalizado ante Notario Público entre el señor Manuel Cacho Vega, como dueño de la finca, e Ignacio Cacho Parés, como arrendatario.

"3. Que luego de radicada la demanda enmendada se presentó por el demandado Manuel Cacho Vega una excepción previa, ale-

gando que en cuanto a él la demanda enmendada no aduce hechos suficientes para constituir una causa de acción, y la parte demandante reconoce y acepta que en realidad y después de investigaciones practicadas y de acuerdo con la misma prueba de esta parte, en realidad dicho demandado Manuel Cacho Vega no tiene responsabilidad de clase alguna en este caso, siendo el responsable el otro demandado Ignacio Cacho Parés, en su carácter de arrendatario de la finca y dueño del caballo que originó el accidente objeto de la causa de acción.

"4. Y alega ahora la demandante que el demandado Ignacio Cacho Parés le ha ofrecido voluntariamente y luego de varias conversaciones sostenidas al efecto, como vía de transacción de este pleito, la suma de doscientos dólares (200) por concepto de los supuestos daños y perjuicios causados al menor Luis Calderón, y que esta parte demandante considera dicha suma una cuantía justa y razonable por los daños y perjuicios sufridos, ya que las lesiones recibidas por el referido menor no son de la gravedad e importancia mencionadas en la demanda original radicada en este caso.

"5. Que a juicio de la parte demandante es conveniente para el menor Luis Calderón que se acepte la suma de doscientos dólares (200) como transacción de este caso, ya que las lesiones recibidas por dicho menor no son graves, y se expone esta parte a que dados los incidentes de los pleitos el mismo podría fallarse adverso a esta parte; además, la madre de dicho menor es una persona completamente pobre y no puede atender a los gastos para poder llevar a los testigos ante esa Hon. Corte y sufragar los demás gastos del pleito, entre éstos los honorarios de abogado.

"6. Que aunque el demandado Ignacio Cacho Parés no comparece en la presente moción y por cuyo motivo esa Hon. Corte no podría dictar sentencia, la demandante puede ofrecer a esa Hon. Corte en su oportunidad la aceptación por parte de dicho demandado para que se dicte sentencia declarando con lugar la demanda en cuanto a este demandado por la suma de $200 sin incluir gastos ni honorarios de abogados, toda vez que en la referida suma de $200 están incluídos los mismos.

"EN SU VIRTUD la demandante solicita de esa Hon. Corte que luego de una vista en corte abierta para justificar la conveniencia para el menor demandante de aceptar dicha suma de $200 como completa reparación de los daños sufridos, por medio de prueba testifical y pericial de la que pueda desprenderse el grado de negligencia del demandado Ignacio Cacho Parés y el verdadero daño sufrido por la parte demandante y sus consecuencias, y la conformidad de

este demandado, dicte una sentencia declarando con lugar la presente demanda y condenando al demandado Ignacio Cacho Parés a pagar la suma de $200 sin especial condena de costas, y cuya suma deberá quedar consignada en corte hasta tanto que la madre del menor justifique la necesidad de extraer el todo o parte con fines que sean necesarios o convenientes a los intereses de dicho menor.

"Ciales para Arecibo, Puerto Rico, a 20 de marzo de 1939. (Firmados) Víctor Rivera Colón—Ángel Rivera Colón, abogados de la demandante."

El día 31 de marzo de 1939, en corte abierta el juez inferior, después de oír prueba, declaró sin lugar la moción antes transcrita. Los abogados del demandante radicaron otra demanda enmendada fechada el 24 de abril de 1939, de la que eliminaron al demandado Ignacio Cacho Parés, y el 6 de septiembre del mismo año la corte inferior dictó una resolución titulada "Orden Resolviendo Solicitud para que se admita una Demanda Enmendada." Dicha orden se refiere a la demanda enmendada de 24 de abril de 1939. En la referida orden de 6 de septiembre de 1939, la corte inferior resolvió que permitiría la radicación de la demanda enmendada en la que se eliminaba a Ignacio Cacho Parés, tan pronto se acreditase por los abogados del demandante que habían desistido de su acción contra el demandado últimamente mencionado, caso en el cual se dictaría sentencia en la corte inferior teniendo al demandante por desistido de su acción contra dicho demandado. En efecto, con fecha 15 de septiembre de 1939, conforme aparece de los autos, de acuerdo con una moción del demandante de fecha 14 de septiembre de 1939 la corte dictó sentencia declarando al demandante desistido de su acción contra Ignacio Cacho Parés, sin perjuicio de que la acción continuara contra el otro demandado Manuel Cacho Vega de acuerdo con la demanda enmendada de 24 de abril de 1939.

Nos hemos limitado a exponer la conducta profesional de los abogados del demandante en este caso tal y como aparece de los autos y nos abstenemos de hacer comentario al-

guno en relación con la misma, a fin de no prejuzgar la investigación que en relación con este asunto deberá practicar el Fiscal de este Tribunal. Pasemos, pues, al estudio del caso según resulta de las alegaciones y de la prueba.

El demandante apelado, menor de ocho años de edad representado por su madre con patria potestad, instó este pleito a fin de obtener el resarcimiento de los daños y perjuicios sufridos por él como consecuencia de la fractura y hundimiento del hueso frontal. La lesión fué causada por una coz de un caballo que según alega poseía y se servía de él el demandado en una finca de su propiedad en el barrio Pasto de Morovis.

La evidencia relacionada con los puntos determinantes de la responsabilidad del demandado es contradictoria. La del demandante tiende a probar que su madre es dueña de una finca de dieciséis cuerdas radicada en el barrio Vega, colindante con la del demandado sita en el barrio Pasto, ambos barrios pertenecientes al término municipal de Morovis. Que el demandado adquirió su indicada finca por compra al Federal Land Bank, el cual a su vez la había adquirido de Honorio Claudio Archilla. Que cuando el demandado fué a tomar posesión material de su finca, aun la estaba ocupando el anterior dueño Honorio Claudio Archilla, quien al dejarla a la libre disposición del demandado, vendió a éste varios caballos de carga que tenía en ella. Entre éstos se hallaba un zaino que tenía reputación de ser un animal vicioso y del que se decía había matado a otro caballo anteriormente. Que dicho caballo al tiempo del accidente era utilizado por el demandado en las faenas agrícolas de su indicada finca. Que la finca del demandado y la de la madre del demandante estaban separadas por una cerca en mal estado, circunstancia ésta que daba lugar a que los caballos del demandado frecuentemente se pasaran a la finca de la madre del demandante, de lo cual se había quejado ella al demandado en distintas ocasiones. Que allá para el 18 de octubre de 1938, la

madre del demandante se hallaba lavando en un riachuelo que pasa por su finca y como a las doce del día el menor, acompañado de Francisca Calderas, fué a llevar café a su madre; que ésta permaneció algún tiempo más en el río y cuando el menor y Francisca Calderas regresaban al hogar, el caballo zaino venía corriendo en dirección contraria a la de ellos, por un camino vecinal que debían tomar para regresar a la casa del menor; que al pasar el caballo junto a éste, le lanzó la coz sin que el menor en forma alguna hubiese molestado al animal. Que el demandado ha residido siempre en otra finca que posee en el barrio Barahona. Que la que posee en el barrio Pasto es administrada por su hijo Ignacio Cacho Parés, quien antes administraba otra finca de su padre en el barrio Torrecillas, de Morovis. Que el demandado visitaba con frecuencia su finca del barrio Pasto para supervisar y dirigir las faenas agrícolas.

De otro lado, la prueba del demandado no controvierte la existencia del accidente. Por el contrario lo admite. Pero trata de establecer, primero, que él no era dueño ni se servía del caballo en cuestión al tiempo del accidente, y, segundo, que el daño provino por culpa del menor al introducirse en el cercado donde tranquilamente pastaba el animal, hincándolo por detrás con una varita.

Para probar que él no estaba en posesión de la finca al tiempo del accidente, presentó en evidencia un contrato de arrendamiento de dicha finca celebrado entre él y su hijo desde junio de 1937, el cual fué formalizado en documento privado redactado por el propio abogado del demandante. Presentó además evidencia al efecto de que el demandado no intervenía en forma alguna con los trabajos que en la finca realizaba el arrendatario. Que de vez en cuando venía a la finca a ver a su hijo, pero que estas visitas no eran frecuentes debido a lo distante que él vivía y a que los caminos eran malos y tenía que ir a caballo. Además del citado contrato ofreció en evidencia ciertos records de la Administración de

Ajuste Agrícola de los que aparece que a base de dicho contrato de arrendamiento Ignacio Cacho Parés desde una fecha anterior al accidente, venía recibiendo compensación de suelo en relación con el tabaco que todos los años cultivaba en la finca. Ofreció evidencia además al efecto de que en relación con las siembras de tabaco, también desde fecha anterior al accidente Ignacio Cacho Parés recibía a su propio nombre de Morán & Cía., de Manatí, la refacción necesaria para llevar a cabo dicho cultivo. Que el caballo en cuestión pertenecía a Ignacio Cacho Parés. Que ese caballo, como un año antes del accidente, el demandado lo tuvo en su finca de Barahona y lo permutó en mayo de 1937 a Pedro Collazo por una novilla; que Collazo lo poseyó por espacio de dos meses y lo vendió a Jubiliano Torres en $18, y que este último lo poseyó por cinco meses vendiéndolo entonces a Ignacio Cacho Parés.

Mientras Ignacio Cacho Parés declaraba como testigo del demandado en relación con el contrato de arrendamiento, el abogado del demandante le preguntó si era o no cierto que en mayo de 1939 había jurado ante el juez de paz de Morovis una denuncia contra José Padilla Colón y Joaquín Pérez imputándoles el hurto de unos ñames de la finca en cuestión, en la cual denuncia expresaba el testigo que los bienes hurtados eran de la propiedad de su padre Manuel Cacho, cuyos bienes el demandado administraba. El testigo aceptó haber jurado la denuncia, pero trató de explicar el incidente diciendo que dicha denuncia la había preparado su cuñado, que él la firmó sin leerla y que luego, al celebrarse el juicio en la Corte Municipal de Ciales y oír al secretario leerla, se dió cuenta del error y llamó la atención del juez al efecto de que él, Ignacio Cacho, y no su padre, era el verdadero dueño de los bienes hurtados; que él no era administrador sino arrendatario de la finca. Contestó además dicho testigo que el ahora abogado del demandante, Sr. Angel Rivera Colón, oyó esas manifestaciones que él hiciera entonces ante el

Juez Municipal de Ciales; que dicho abogado se hallaba presente, siendo como·era entonces abogado de los acusados en el caso criminal.

El abogado del demandante no hizo manifestación alguna en contrario. En ese momento el abogado del demandado solicitó del juez inferior que ordenase la citación del Juez Municipal y del secretario de la Corte Municipal de Ciales a fin de que comparecieran como testigos para corroborar la declaración de Ignacio Cacho en relación con dicho incidente y la corte no accedió, indicándole que estaría dispuesto a admitir una certificación de dicha Corte Municipal sobre el extremo indicado. Tal certificación no fué presentada.

Terminada la evidencia del demandado, el Lic. Angel Rivera Colón, abogado del demandante, ofreció su declaración para probar que el alegado contrato de arrendamiento entre el demandado y su hijo era una mera simulación. El abogado del demandado se opuso, alegando que las manifestaciones que le hubieran hecho los contratantes al redactar el documento constituían comunicaciones privilegiadas sobre las cuales el abogado no podía declarar sin el consentimiento del demandado. La corte sostuvo la oposición del demandado y el demandante tomó excepción.

¿Erró la corte sentenciadora en la apreciación de la prueba, como le imputa el demandado apelante? Si examinamos la opinión que sirve de fundamento a la sentencia, nos convenceremos de que tiene razón el apelante. En dicha opinión dice el juez sentenciador:

"Quedó claramente establecido por la prueba que el demandado compró el caballo objeto del daño a don Honorio Claudio, y en adición a la prueba del demandante, varios testigos del mismo demandado admitieron que el caballo simpre lo habían visto en la finca del demandado desde la fecha en que éste lo compró.

"*Tal evidencia destruyó la prueba del demandado con la cual quiso demostrar que no era dueño del animal al tiempo del accidente.* (Bastardillas nuestras.)

Esa conclusión de la corte sentenciadora es errónea. La prueba del demandante sobre quién era el dueño del caballo consistió en la declaración de Honorio Claudio Archilla que ya conocemos y el hecho de encontrarse el animal y ser utilizado en los trabajos de la finca en el barrio Pasto, propiedad del demandado. En cuanto a que Honorio Claudio Archilla hubiese vendido el caballo al demandado, no lo niega éste, pero para probar que ni en la fecha del accidente ni en ningún momento después fuese dueño del caballo, el demandado presentó la declaración de dos personas que poseyeron el animal con posterioridad al demandado. La primera de ellas lo adquirió por permuta celebrada con el demandado y lo vendió al segundo, quien a su vez lo vendió a Ignacio Cacho Parés. Ninguno de los testigos del demandado declaró haber visto el caballo en la finca del barrio Pasto por espacio de cuatro años *desde que el demandado lo compró*. Lo que declararon algunos de ellos fué que habían visto el caballo en la finca en cuestión por espacio de cuatro años mientras dicha finca pertenecía a Honorio Claudio Archilla. Uno de estos testigos, Ramón Jiménez, declaró que el demandado lo compró a Honorio Claudio Archilla y se lo trajo para su finca de Barahona (récord, pág. 205). Sin duda para destruir la prueba del demandante a los efectos de que el caballo era utilizado por el demandado en su finca del barrio Pasto, fué que el demandado presentó evidencia tendente a probar el arrendamiento de que hemos hecho mérito. Es evidente que esa errónea apreciación del testimonio de Ramón Jiménez perjudicó indebidamente al demandado y siendo ello así, procede por ese fundamento la revocación de la sentencia.

Pero el demandante ofreció la declaración de su abogado para probar que el contrato de arrendamiento era simulado y que Ignacio Cacho Parés era en tal virtud un mero administrador de la finca. De creer la corte inferior la prueba de la simulación, si también creyera la que presentó el de-

mandante al efecto de que el caballo era utilizado en los trabajos de la finca, hubiera tenido base para inferir que el demandado, si no era dueño, por lo menos se servía del animal en su propio beneficio, y en tal caso hubiera sido responsable de los daños causados, de conformidad con el artículo 1805 del Código Civil, que dice así:

"Artículo 1805.—El poseedor de un animal, o el que se sirve de él, es responsable de los perjuicios que causare, aunque se le escape o extravíe. Sólo cesará esta responsabilidad en el caso de que el daño proviniera de fuerza mayor o de culpa del que lo hubiese sufrido."

La admisibilidad de esa evidencia depende de que el abogado Sr. Angel Rivera Colón no hubiera sido consultado por los contratantes con respecto al efecto legal del contrato. Si ellos simplemente se concretaron a pedirle que redactase el contrato, sin solicitar de él opinión legal alguna respecto a los derechos y obligaciones que podrían surgir de la transacción, en otras palabras, si su intervención se limitó exclusivamente a actuar como un mero instrumento para poner por escrito lo que ellos dijeron haber convenido, en ese caso el Sr. Rivera Colón, en contemplación de la ley, no actuó en su carácter de abogado; y sí dentro de las circunstancias expuestas incidentalmente en el curso de la conversación las partes o una de ellas en presencia y al alcance del oído de la otra, sin protesta de ésta, le dijeron que la transacción era simulada, en ese caso la comunicación no tenía el carácter de privilegiada y por lo tanto era admisible. Por el contrario, si el abogado fué consultado sobre el efecto legal del contrato que iba a redactar, es decir, sobre los derechos y obligaciones de las partes como arrendador y arrendatario respectivamente, etc., y en el curso de esa consulta se le comunicó que el contrato era simulado, entonces la comunicación, a menos que la simulación se hiciera con propósitos fraudulentos, constituía una comunicación privilegiada y como tal

era inadmisible en evidencia sin el consentimiento del demandado. 8 Wigmore *on Evidence* (ed. 1940), sección 2297, pág. 571, y casos citados, y 3 Jones *on Evidence* (4a ed. 1938), pág. 1345. Por consiguiente, a los efectos de admitir o rechazar esa prueba, debió previamente investigar la corte sentenciadora en cuál de las dos circunstancias antes dichas fué hecha la alegada manifestación, para de ese modo determinar si la evidencia era o no admisible.

Parece conveniente agregar que el juez inferior, refiriéndose al contrato de arrendamiento, dice:

"Aunque la parte demandada presentó un documento que representa ser un contrato de arrendamiento a favor del hijo y prueba colateral sobre que el hijo se entendía con terceros con respecto a la finca, hay un documento auténtico en que aparece que Ignacio Cacho declaró bajo juramento ante la Corte Municipal de Ciales, en un caso criminal, que él administraba los referidos bienes del padre en el barrio 'Pasto' de Morovis."

Sin embargo, no debe perderse de vista que esa admisión hecha por Ignacio Cacho Parés sólo es admisible para impugnar su veracidad, pero no obliga al demandado Manuel Cacho Vega, pues para ello sería preciso que el primero fuese agente o socio del segundo, que se probase la existencia de la agencia o sociedad, y que el acto o declaración estuviere comprendido dentro del objeto de la sociedad o agencia y durante su existencia. (Art. 397, Código de Enjuiciamiento Civil.)

Sería injusto para el menor demandante revocar la sentencia por el error cometido en la apreciación de la prueba, sin darle una oportunidad de someter a la consideración de la corte la evidencia sobre la simulación, si es que las circunstancias en que hubiere sido hecha la comunicación al abogado la hacían admisible de acuerdo con los principios antes expuestos. Dicha prueba, de ser creída, podría inclinar la balanza de la justicia a su favor.

En tal virtud y teniendo en cuenta las circunstancias extraordinarias que han tenido lugar en el presente caso, *pro-*

*cede revocar la sentencia apelada que dictó la corte inferior
en 11 de agosto de 1941 y devolver el caso a dicha corte para
la celebración de un nuevo juicio.*