Luis E. DE Soto, demandante y apelado, *v.* Clínica Industrial, Inc., demandada y apelante.

Núm. 10100.—*Sometido:* Noviembre 8, 1950. *Resuelto:* Noviembre 28, 1950.

*Víctor Gutiérrez Franqui, Lino J. Saldaña, Luis F. Sánchez Vilella y José Trías Monge,* abogados de la apelante; *Guillermo Bauzá,* abogado del apelado.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

Luis E. De Soto radicó demanda contra la Clínica Industrial, Inc. en cobro de salarios devengados y no pagados ascendentes a la suma de $16,199.56. Luego de un juicio en los méritos, la corte de distrito dictó sentencia a favor del demandante por la cantidad de $9,362.74, $250 para honorarios de abogado y las costas. La corte inferior basó su sentencia en lo siguiente:

"Conclusiones de hechos probados.

"1. Que desde el 7 de noviembre de 1935 hasta el 30 de abril de 1942 el querellante trabajó para la querellada mediante un contrato verbal para trabajar 8 horas diarias, 6 días a la semana, en el entendido que el tiempo extra que tuviera que trabajar el querellante se le pagaría a tipo doble (doble tiempo) del salario que estaba percibiendo.

"2. Que desde el 7 de noviembre de 1935 hasta el 31 de diciembre de 1937 el querellante trabajó para la querellada por un sueldo mensual de $60 y desde el 1ro. de enero de 1938 hasta el 30 de abril de 1942 por un sueldo mensual de $83.

"3. Que desde el 7 de noviembre de 1935 hasta el 30 de abril de 1942 el querellante trabajó para la querellada un total de 16 horas diarias por siete días a la semana sin recibir paga alguna por las horas extras trabajadas (hecho aceptado por la demandada.)

"Conclusiones de derecho.

"1. Tanto de las alegaciones, como de la presentación del caso por los abogados durante la vista del mismo, como de la prueba producida por el querellante, es clara la intención de las partes, en cuanto, a que el contrato de trabajo envuelto en el presente caso, es uno para ser resuelto dentro de los términos de la Ley número 49 de 7 de agosto de 1935, . . .

"2. (Esta conclusión consiste de una cita de la sección 1 de la Ley núm. 49.)

"3. Cuando uno o más de los pactos contenidos en cualquier contrato ordinario, está regido por estatuto, o sea, está intervenido por el orden público, las disposiciones del estatuto forman parte del contrato celebrado entre las partes.

"4. La sección 1ra. de la Ley número 49 de 7 de agosto de 1935 ha sido interpretada en Puerto Rico en el sentido, que si un empleado trabaja más de ocho horas por cada día natural, las horas extras deben ser satisfechas a razón de tipo doble las novenas horas y a razón de tipo sencillo las otras horas en exceso de nueve de acuerdo con el sueldo que perciba el empleado.

"5. Un empleado que trabaja dieciséis horas diarias por $60 mensuales, el sueldo cubre sólo las ocho horas regulares. *Vélez v. Royal Bank*, 65 D.P.R. 967 y el resto de las horas le deberán ser pagadas a razón de doble compensación por la novena hora y compensación ordinaria por el trabajo extra realizado en exceso de la novena hora. *Cardona* v. *Corte*, 62 D.P.R. 61; *Díaz* v. *Sucrs. de F. Ortega & Co.*, 63 D.P.R. 249.

"6. Si un empleado, cuyo contrato mensual con el patrono es de 8 horas diarias por 6 días a la semana, trabaja los 7 días a la semana, el séptimo día le debe ser satisfecho como trabajo extra, a razón de tipo sencillo las primeras ocho horas, tipo doble la novena hora y tipo sencillo el resto de las horas trabajadas en exceso de nueve;" (¹)

En apelación, la demandada sostiene que la corte inferior cometió manifiesto error en sus primera y tercera conclusiones de hecho. También alega que "la tercera, cuarta y quinta conclusiones de derecho del tribunal inferior son erróneas y sientan normas de derecho cuya aplicación a las controversias de hecho y de derecho envueltas en el caso justifica la revocación de la sentencia dictada por el tribunal inferior." (²)

▆▆▆ Empezaremos por considerar la última contención de la demandada. Las conclusiones de derecho de la corte inferior requieren escasa discusión. Repetidamente hemos resuelto que con excepción de la novena hora, la Ley núm. 49 nada tiene que ver con estos casos. Más bien la cuestión es exclusivamente una de contrato entre las partes. En consecuencia, si el convenio de las partes es que el salario men-

---

(¹) La séptima conclusión de derecho trataba del alegado método exigido para calcular la paga extra. Es innecesario a nuestros fines que examinemos esta conclusión de derecho.

(²) La demandada también señala como error la séptima conclusión de derecho. Como ya se ha indicado, el resultado a que llegamos hace innecesario que consideremos dicho error.

sual estipulado cubra todas las horas trabajadas, el demandante nada adicional recibe por las horas trabajadas en exceso de nueve. Bajo estas circunstancias, el único efecto de la Ley núm. 49 es exigir paga adicional por la novena hora al tipo calculado al dividirse la suma recibida por el total de las horas trabajadas. ([3])

Por consiguiente la corte de distrito erró en su cuarta conclusión de derecho al efecto de que la *sección 1 de la Ley núm. 49* exige el pago de paga sencilla por las horas trabajadas en exceso de la novena. Asimismo fué errónea su resolución en la quinta conclusión al efecto de que como cuestión de derecho el salario de un empleado que trabaja 16 horas diarias por $60 mensuales sólo cubre 8 horas diarias y que por ende él tiene derecho a paga adicional al tipo sencillo por las horas trabajadas en exceso de la novena. Los casos que cita la corte para sostener estas proposiciones resuelven exactamente lo contrario.

Como se indicará más adelante, lo importante para nuestros fines es que la corte inferior creyó que la Ley núm. 49 exigía paga sencilla por trabajo realizado en exceso de nueve horas diarias, independientemente del contrato. La corte de distrito desechó su propia conclusión de hecho de que el *contrato* de las partes disponía paga doble por trabajo realizado en exceso de nueve horas; por el contrario, concedió solamente paga sencilla por dicho trabajo, no obstante el contrato, bajo la teoría de que *la Ley núm. 49* exige tal paga como cuestión de fíat legislativo. Dicha errónea conclusión de derecho obviamente se basó en el presunto requisito de la Ley núm. 49, y no en contrato alguno.

De ordinario, errores en las conclusiones de derecho no exigirían la revocación. Siempre y cuando que las conclu-

---

([3]) *Cardona* v. *Corte*, 62 D.P.R. 61; *Muñoz* v. *Corte*, 63 D.P.R. 236; *Alcalá* v. *Ponce Star Line*, 63 D.P.R. 860; *Torres* v. *González*, 63 D.P.R. 964; *Sucn. J. Serrallés* v. *Corte*, 64 D.P.R. 497; *Avellanet* v. *Porto Rican Express Co.*, 64 D.P.R. 693, 697; *Montalvo* v. *Paul Smith Const. Co.*, 64 D.P.R. 760; *García* v. *Corte*, 69 D.P.R. 152; *Chabrán* v. *Bull Insular Line*, 69 D.P.R. 269, 298–99.

siones de hecho estén sostenidas por la prueba, simplemente desecharíamos las conclusiones de derecho erróneas y aplicaríamos las conclusiones correctas a los hechos según los halló probados la corte inferior. Sin embargo, la demandada arguye que no podemos resolver este caso en esta forma. En primer lugar, sostiene que la corte inferior cometió manifiesto error en sus conclusiones de hecho, procediendo sentencia a favor de la demandada. En segundo lugar, alega ésta que la corte inferior se confundió tanto con su errónea interpretación de la ley (al efecto de que la responsabilidad emanaba de la Ley núm. 49 independientemente del contrato) que no enfocó su atención a los términos del contrato, que era la única cuestión importante ante su consideración. Por el contrario, según la demandada, la corte inferior meramente resolvió de manera *pro forma* que existía un contrato, el cual creyó innecesario y el cual no siguió en sus conclusiones de derecho. Sostiene la demandada que este erróneo enfoque de la corte inferior más la naturaleza dudosa de la evidencia sobre la cual se basaron las conclusiones de hecho, le dan derecho a ella a un nuevo juicio.

Al considerar estas dos contenciones de la demandada, pasamos primeramente a su argumento de que la corte inferior cometió manifiesto error en su primera conclusión de hecho. La única prueba en los autos sobre este punto es la propia declaración del demandante y la del Dr. Franceschi. La demandada no ofreció prueba sobre ésta o sobre alguna otra cuestión.

*Luis E. De Soto* declaró que empezó a trabajar para el Dr. Guzmán, su primo, en 1932 cuando éste inauguró su clínica; que al principio el doctor no tenía dinero para pagar sus empleados; que desde el 7 de noviembre de 1935 trabajó como promedio desde las 7 de la mañana hasta las dos de la madrugada; que su contrato con el Dr. Guzmán fué que éste le pagaría doble tiempo por las horas que él trabajara en exceso de 8 horas; que en 1935 su salario fué de $60 mensuales; que en enero 1, 1938 le fué aumentado a $83

mensuales; que trabajó por este último sueldo hasta el 30 de abril de 1942; que nunca se le pagaron las horas que trabajó en exceso de 8 por "ciertas razones"; que su trabajo era general, rayos X, en laboratorio, en pintura, en carpintería, en la disciplina, en curar pacientes, hacer yesos; que él era prácticamente la clínica, y que ésa era la razón por la cual el Dr. Guzmán no quería que él tuviera un centavo de su dinero para poderse ir; que él no se fué por no haber una colocación a ningún precio.

En el contrainterrogatorio, De Soto declaró que en 1932 no hubo convenio en cuanto a paga doble; que primeramente él no vivía en la clínica, pero luego en 1935 vivía en ella; que en 1932 el doctor le pagó el salario convenido, pero luego no; que hubo dos contratos: uno en 1932 y uno después cuando convinieron en la paga doble; que desde 1935 al 1938 él no hizo objeción alguna cuando recibía su cheque de que era muy poco dinero; que él es el mejor experto en Puerto Rico en rayos X; que a pesar de sus conocimientos y a pesar del hecho de que no se le pagaba lo convenido, él continuó trabajando en la clínica porque no tenía otro escape; que él era el mayor experto en Puerto Rico pero no había colocación a ningún precio; que había un escape durante la guerra pero ya no le convenía irse y se fué cuando lo llamaron del ejército; que desde 1935 al 1943 no le escribió al doctor haciéndole reclamación alguna; que cuando empezó a trabajar en 1932, trabajó 8 horas diarias, 6 días a la semana, por $20 mensuales; que su reclamación por horas extras vino cuando el Dr. Franceschi le ofreció paga doble, triple o lo que fuera necesario si él trabajaba para él en su oficina en rayos X, en los bajos de la clínica, durante horas extras; que el Dr. Guzmán le dijo al Dr. Franceschi, en presencia de De Soto, que ". . . yo lo necesito, de absoluta necesidad y si tú estás dispuesto a pagarle triple por el trabajo que te haga, yo me comprometo a pagarle doble tiempo por todo el tiempo que me trabaje después de las ocho horas, incluyendo domingos y días de fiesta"; que él iba a traba-

jarle al Dr. Franceschi luego de terminado su trabajo en la clínica; que el trabajo en la clínica nunca terminaba; que trabajaba sin horario fijo.

En el examen redirecto, De Soto declaró que sus horas en la clínica eran 8, pero que en realidad trabajaba de 16 a 18 horas; que en 1932 su salario iba a ser en relación con las ganancias que tuviera el negocio porque él fué quien le dió al Dr. Guzmán la oportunidad de empezar el negocio y abrir la clínica; que el convenio para tiempo extra fué en 1935; que al principio se convino en pagarle de acuerdo con las ganancias y que cuando no se le pagó en esta forma, se convino en pagarle por las horas extras.

Al contrainterrogársele de nuevo, De Soto declaró que el Dr. Franceschi trató de obtener sus servicios en julio de 1935 después que el doctor vió una placa de rayos X que el testigo tomó en la clínica; que hizo su reclamación desde el 6 de noviembre de 1935 porque sus abogados le dijeron que ésa era la fecha desde la cual regía la ley; que el doctor convino en pagarle tiempo doble antes de esta fecha; que si él se hubiera ido de la clínica, habría obtenido otra colocación, pero que el Dr. Guzmán, como primo suyo, siempre decía a todo el mundo que "cuando yo salgo de la clínica, después queda Luis; que cuando empezó primeramente a trabajar para el Dr. Guzmán, si éste le hubiera dicho que iba a ganar $100 no habría aceptado la colocación; que $100 no es ni la mitad de lo que él ganaba en los Estados Unidos; que él no era un empleado cualquiera; que ha estudiado en la Universidad de Colombia; que él no vino aquí a ganar $20, sino porque su madre murió y su padre quedó solo.

El Dr. Francisco Franceschi Caballero, al declarar en relación con la conversación en julio de 1935, manifestó que luego de haber De Soto tomado una radiografía de su mano, le hizo una proposición para que trabajara con él; que en presencia de De Soto, el testigo le preguntó al Dr. Guzmán si De Soto podía trabajar horas extras para él; que el Dr. Guzmán le dijo que él lo necesitaba todo el tiempo y no permi-

tiría que trabajara para el Dr. Franceschi; que "lo que yo le pudiera pagar por el tiempo extra, él estaba dispuesto a dárselo".

La demandada tilda la declaración de De Soto como "confusa, contradictoria y en extremo improbable e increíble." Por tanto, nos pide que desechemos esta prueba sobre el punto de la existencia y términos del contrato, según los halló probados la corte inferior. Si fuéramos a hacer esto, convendríamos con la demandada en que no había otra evidencia en los autos para sostener la conclusión de hecho al efecto de que las partes convinieron en paga doble luego de ocho horas por seis días de trabajo. Esto es así porque la declaración del Dr. Franceschi, por sí sola, no demuestra ningún contrato definido o específico para tal paga doble. Por el contrario, según indica la demandada, el aumento de $20 a $60 en 1935 en el sueldo mensual del demandante sería consistente con el testimonio del Dr. Franceschi.

La demandada argumenta este punto extensamente, citando muchas partes de la declaración de De Soto en apoyo de su contención. Y si por el momento aceptáramos *argüendo* la tercera conclusión de hecho de que durante 6½ años el demandante—quien según su propia manifestación era y es el mejor experto en rayos X en Puerto Rico—trabajó *normal* y *regularmente* 16 horas diarias, 365 días al año, no puede negarse que un *contrato* que provee paga doble por trabajo realizado durante las últimas ocho horas, sería muy poco usual. Como dijimos en *Cardona* v. *Corte*, supra, a la pág. 75, "el pagar tiempo doble [no es], hablando estrictamente, compensación propiamente dicha por los servicios rendidos, según son fijados por los tipos que rigen para tales servicios. En verdad, hablando objetivamente, un obrero cansado, que está sujeto a un riesgo mayor de accidente, quizá vale menos que el tipo corriente de compensación, en vez de valer el doble." Dicho en otras palabras, un patrono podría hacer un contrato para tiempo doble por trabajo realizado en exceso de ocho horas, cuando tal trabajo extra ocurre ocasionalmente, o du-

rante poco tiempo.  *Cf. García* v. *Corte,* 69 D.P.R. 152.  Pero parece improbable que se haga un *contrato,* según se distingue del requisito de ley, por paga doble en exceso de las ocho horas, cuando como ocurre aquí el día normal de trabajo se alega era de *16* horas durante 6½ años.  Desde luego, un contrato así podría existir; pero el peso de probarlo a la parte que lo alega es fuerte.

Por otro lado, cuando hemos dejado sin efecto conclusiones de hecho que envuelven tales contratos, los autos o (1) no han contenido evidencia alguna de *un contrato* para pagarle al demandante tiempo doble por trabajo en exceso de ocho horas, o (2) han contenido evidencia contradictoria de naturaleza impresionante y decisiva ofrecida por el demandado.(⁴)  Ninguna de estas dos situaciones ocurre aquí.  De Soto declaró que él tenía tal contrato verbal.  Y la demandada optó por no ofrecer prueba alguna.  No obstante estas consideraciones, la demandada nos pide que rechacemos la declaración de De Soto en relación con el contrato como increíble bajo todas las circunstancias.  Sin embargo, no tenemos que confrontarnos con esta cuestión, ya que somos de opinión, por razones que más adelante expondremos, de que procede un nuevo juicio.  En su consecuencia, no tenemos que decidir si la corte inferior cometió manifiesto error al resolver como cuestión de hecho que las partes efectuaron un contrato verbal para tiempo doble por trabajo en exceso de las ocho horas.

■ Pasemos seguidamente a la segunda contención de la demandada en relación con la primera conclusión de hecho; es decir, que la corte inferior llegó a la misma en forma puramente mecánica porque se convenció erróneamente que el caso estaba controlado por la Ley núm. 49 más bien que por el contrato de las partes.  Después de examinar el testimonio, las conclusiones de hecho y las conclusiones de

(⁴) Véanse *Chabrán* v. *Bull Insular Line,* supra; *Vélez* v. *Royal Bank,* 65 D.P.R. 967; *Torres* v. *González,* 63 D.P.R. 964; *Sucn. Valdivieso* v. *Corte,* 64 D.P.R. 493; *Sucn. J. Serrallés* v. *Corte,* supra, *Avellanet* v. *Porto Rican Express Co.,* supra; *Muñoz* v. *Corte,* supra.

derecho, estamos convencidos de que la corte de distrito se confundió tanto por su errónea interpretación de la Ley núm. 49, que no basó su sentencia en la conclusión de hecho de que las partes contrataron paga doble por trabajo en exceso de ocho horas. Como ya se ha indicado, el contrato que la corte aparentemente resolvió que existía, hubiera exigido paga doble, no sencilla, por las horas de la décima a la décimosexta. Sin embargo, la corte en sus conclusiones de derecho concedió solamente paga sencilla por dichas horas, demostrando claramente que concedía la paga de conformidad con una noción errónea de la ley y no a tenor con un contrato. En verdad, ninguna persona razonable haría un contrato—según éste se distingue de las disposiciones defectuosas de la Ley núm. 49 descritas en detalle en el caso de *Cardona*—proveyendo un día normal de 16 horas por el cual recibiría paga *doble* por la novena hora pero únicamente paga sencilla de la décima a la décimosexta. Obviamente, la sentencia se predicó en las supuestas disposiciones de la Ley núm. 49, y no en un contrato. Si la corte inferior hubiera en verdad creído la existencia de tal contrato, habría dictado sentencia a tenor con el contrato por paga doble por todas las horas trabajadas en exceso de la octava. ([5])

Nos vemos constreñidos a concluir que la corte inferior no resolvió deliberadamente como cuestión de hecho que existió un contrato según lo describe el demandante. Por el contrario, enfocó su atención enteramente hacia una interpretación errónea de la Ley núm. 49. Y, considerando innecesario para la decisión de este caso la primera conclusión de hecho, dictó tal conclusión de manera puramente mecánica y *pro forma*.

No obstante lo antes expuesto, si de los autos surgiera evidencia que justificare la primera conclusión de hecho en

---

([5]) El propio demandante parece creer que su reclamación por trabajo realizado en exceso de la novena hora emana de la Ley núm. 49 y no de un contrato. Fija su reclamación, y se le concedió la sentencia, desde el 7 de noviembre de 1935, fecha en que empezó a regir la Ley núm. 49. Pero si, según alega el demandante, existió un contrato, éste se otorgó en julio de 1935.

forma sustancial, seguiríamos la regla corriente ya expuesta de aplicar las conclusiones correctas de derecho a las conclusiones de hecho según las expuso la corte inferior. La dificultad aquí tiene dos aspectos. En primer lugar, aquí no tenemos las conclusiones de hecho en el sentido usual. Como ya hemos expuesto claramente, la primera conclusión de hecho no fué hecha por la corte inferior luego de apreciar cuidadosa y críticamente la evidencia. En segundo lugar, por los motivos ya expuestos, la única evidencia sobre la cual podría basarse la primera conclusión fuerza nuestra credulidad. Bajo estas circunstancias peculiarísimas, creemos que es preferible, en bien de la justicia, que se celebre un nuevo juicio en el cual la corte inferior (1) deseche su teoría errónea de que De Soto tiene derecho a una sentencia por la cantidad que él reclama como cuestión de derecho bajo la Ley núm. 49, y (2) diga categóricamente si da crédito o no al testimonio de De Soto en cuanto a la existencia y términos del supuesto contrato bajo todas las circunstancias de este caso. Cf. *International General Electric Co. of P. R.* v. *Colón*, 62 D.P.R. 574; *Calderón* v. *Cacho*, 62 D.P.R. 620; *Acosta* v. *Crespo et al.*, 70 D.P.R. 239.

Resta sólo considerar el señalamiento de que la corte inferior cometió error manifiesto en su tercera conclusión de hecho al efecto de que el demandante desde el 7 de noviembre de 1935 al 30 de abril de 1942 trabajó para la demandada 16 horas diarias 7 días a la semana.

Alega la demandada (1) que el testimonio del demandante en cuanto al tiempo promedio que él trabajó no fué suficientemente definido y específico para cumplir con el peso de la prueba sobre este punto; (2) que era físicamente imposible para el demandante trabajar un promedio de 16 a 19 horas diarias 365 días al año durante 6½ años; y (3) que la corte de distrito basó su tercera conclusión de hecho, no en la evidencia, sino en una creencia errónea de que la demandada había admitido este hecho. Sobre este último punto, la posición de la demandada es que durante el juicio

ella admitió que el demandante había trabajado 16 horas al día únicamente a los fines de estipular que estaba dispuesta a pagarle al demandante la suma que ella admitía adeudarle *bajo la Ley núm. 49* por todas las novenas horas que él trabajó. Para tales propósitos, convenía desde luego a la demandada admitir que el demandante trabajó 16 horas diarias más bien que un número menor de horas, siempre y cuando que la corte estuviera de acuerdo con su teoría de que el contrato entre las partes fué por un sueldo mensual que cubriría todas las horas trabajadas. Esto es así porque el tipo por hora para paga adicional por la novena hora sería considerablemente menor que si el demandante a tenor con tal convenio hubiera trabajado solamente nueve o diez horas diarias. Véanse *Chabrán* v. *Bull Insular Line,* supra, pág. 302; *Avellanet* v. *Porto Rican Express Co.,* supra, pág. 715.

En vista del hecho de que se celebrará un nuevo juicio, preferimos no pasar sobre este señalamiento. Bajo todas las circunstancias concurrentes, creemos que es mejor que las partes empiecen de nuevo y prueben todos los ángulos del caso.

*Por .los motivos consignados anteriormente, la sentencia de la corte de distrito será revocada y se devolverá el caso para un nuevo juicio.*

El Juez Asociado Sr. Negrón Fernández se inhibió.